1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4   UNITED STATES OF AMERICA,                    )
                                                 )
5              Plaintiff,                         )        Case No.: 2:13-cr-00012-GMN-PAL
         vs.                                      )
6                                                 )        **ORDER**
    KIYOSHI RICARDO HILL,                         )
7                                                 )
               Defendant.                         )
8                                                 )
                                                  )
9   _____          )

10          Pending before the Court is Defendant Kiyoshi Ricardo Hill's ("Defendant's") Motion

11  for Compassionate Release, which he filed *pro se*, (ECF No. 31).  Pursuant to this Court's

12  General Order, the Federal Public Defender's Office ("FPD") filed a Supplement to

13  Defendant's Motion, (ECF No. 33).  The Government filed a Response, explaining that it did

14  not take a position regarding the Motions, (ECF No. 35).  For the reasons discussed below, the

15  Court **DENIES** the Motions.

16  **I.      BACKGROUND**

17          On November 14, 2013, Defendant pleaded guilty to two counts of Felon in Possession

18  of a Firearm. (*See* First Superseding Indictment, ECF No. 14); (Mins. Proceedings, ECF No.

19  28).  The Court sentenced Defendant to seventy (70) months custody, followed by three years

20  of supervised release. (*See* Judgment, ECF No. 30).  Defendant, with fewer than six months

21  remaining prior to his release from confinement, is being housed at the Nevada Southern

22  Detention Center in Pahrump until he is transferred to another, currently undesignated, Bureau

23  of Prisons ("BOP") facility. (Supp. Mot. 2:1–8, ECF No. 33).  On April 28, 2020, Defendant,

24  without counsel, filed the Motion requesting compassionate release under the First Step Act.

25  (*See* Mot. Compassionate Release, ECF No. 31).  Pursuant to this Court's General Order, the

1   FPD filed a Supplemental Motion, clarifying that Defendant seeks a judicial recommendation

2   to the BOP that Defendant be allowed to serve the remainder of his carceral sentence in home

3   confinement pursuant to 18 U.S.C. § 3621, the Second Chance Act, the First Step Act, and the

4   CARES Act. (*See* Supp. Mot. 1:18–23, 2:17–3:21, ECF No. 33).

5   **II.   LEGAL STANDARD**

6   "The Bureau of Prisons has the statutory authority to choose the locations where

7   prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011).

8   When assessing where to house a prisoner, the BOP may consider, among other factors:

9   (4) any statement by the court that imposed the sentence—
    (A) concerning the purposes for which the sentence to imprisonment was
10   determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate.
11

12   *Id.*; 18 U.S.C. § 3621(b).  A district court's recommendation to the BOP is non-binding. *See* 18

13   U.S.C. § 3621(b).  The court may make such a facility recommendation to the BOP at any time.

14   *Ceballos*, 671 F.3d at 856 n.2; *United States v. Hoffman*, No. 2:15-cr-00234-JAM-1, 2018 U.S.

15   Dist. LEXIS 213936, 2018 WL 6634378, at *1 (E.D. Cal. Dec. 19, 2018).

16   Under the Second Chance Act, the BOP may consider placing prisoners who are nearing

17   the end of their sentences in conditions "that will afford [the prisoners] a reasonable

18   opportunity to adjust to and prepare for [their] reentry . . . into the community." *See* 18 U.S.C. §

19   3624(c)(1).  This allows the BOP to place prisoners "with lower risk levels and lower needs" in

20   home confinement for the final ten percent or six months of the prisoner's sentence, whichever

21   is shorter. 18 U.S.C. § 3624(c)(2).  Additionally, the CARES Act "authorizes [the Attorney

22   General] to expand the cohort of inmates who can be considered for home release upon finding

23   that emergency conditions are materially affecting the functioning of the Bureau of Prisons,"

24   and the Attorney General has so implemented new guidance regarding transitioning suitable

25   candidates to home confinement. *See* Attorney General Memorandum for Director of BOP,

1  "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19,"

2  https://www.justice.gov/file/1266661/download (Apr. 3, 2020); Attorney General

3  Memorandum for Director of BOP, "Prioritization of Home Confinement as Appropriate in

4  Response to COVID-19 Pandemic," https://www.justice.gov/file/1262731/download (Mar. 26,

5  2020) ("AG Memos").

6  ## III.    DISCUSSION

7         Defendant argues that the Court should recommend him transferred to home

8  confinement because of the COVID-19 pandemic. (*See id.* 5:7–9:18).  Specifically, Defendant

9  urges this Court to recommend his transfer because Defendant allegedly has a "suitable home

10  confinement plan," and his incarceration at a BOP facility "poses grave danger to his health and

11  to the health of other inmates and staff." (*Id.* 6:6–9:18).  Defendant, however, does not argue

12  that he is at heightened risk of complications from COVID-19. (*See id.*).   He merely contends

13  that, given the high rate of infection within the BOP as compared to the rest of the country, he

14  would not be "safer" in BOP custody than at home. (*Id.* 6:21–8:21).

15         In light of the COVID-19 pandemic, the Attorney General has issued two memoranda to

16  the BOP encouraging the transfer of eligible inmates to home confinement when the inmates

17  are non-violent, pose minimal likelihood of recidivism, and have suitable home confinement

18  plans. *See* AG Memos.  However, both memoranda direct the BOP to prioritize transitioning

19  those inmates to home confinement who are most vulnerable to complications from COVID-19.

20  *See id.*  The cases cited in Defendant's brief demonstrate that courts which have considered

21  similar motions have consistently required defendants to show their vulnerability to

22  complications from COVID-19 before recommending home confinement; the prevalence of

23  COVID-19 within the BOP has not been sufficient. (See Supp. Mot. 4:20–5:6) (citing *United*

24  *States v. Fobbs*, No. CR 19-00410, 2020 U.S. Dist. LEXIS 70886, 2020 WL 1950769, at \*1

25  (N.D. Cal. Apr. 7, 2020) (recommending home confinement "[f]or the reasons stated in the

1   record and given defendant's heightened susceptibility to a severe coronavirus infection.");

2   *United States v. Doshi*, No. 13-cr-20349, 2020 U.S. Dist. LEXIS 55572, 2020 WL 1527186

3   (E.D. Mich. Mar. 31, 2020) (granting home confinement to a sixty-four year old man with

4   diabetes and hypertension); *United States v. Powell*, No. 94-cr-00316, ECF No. 95 (D.D.C.

5   Mar. 24, 2020) (granting recommendation to home confinement for a fifty-five year old man

6   "with several respiratory problems (including asthma and sleep apnea).")).  Here Defendant has

7   not shown, much less alleged, factors indicating his risk to severe coronavirus complications.

8   Accordingly, the Court denies Defendant's Motion and leaves the determination of whether

9   Defendant should be transferred to home confinement to the discretion of the BOP.

10  **IV.     CONCLUSION**

11          **IT IS HEREBY ORDERED** that Defendant's Motions for Recommendation for

12  Transfer to Home Confinement, (ECF Nos. 31, 33), are **DENIED without prejudice**.

13          **DATED** this __8__ day of June, 2020.

14

15

16  _____

17  Gloria M. Navarro, District Judge
    United States District Judge

18

19

20

21

22

23

24

25